# In the United States Court of Federal Claims

No. 14-048V
Filed: December 18, 2015

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ELMER GRAHAM, as parent and       *
natural guardian of G.G.G., a minor   *
child,                               *
                                      *
        Petitioner,           *
v.                             *
                                      *
SECRETARY OF HEALTH AND       *
HUMAN SERVICES,             *
                                      *
        Respondent.           *
                                      *

National Childhood Vaccine
  Injury Act of 1986, 42 U.S.C.
  §§ 300aa-1 to -34 (2012);
Review of Special Master's Denial of
  Request for Attorneys' Fees and Costs.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Jennifer Anne Gore Maglio**, Maglio Christopher Toale and Pitts, Sarasota, Florida, Counsel for Petitioner.

**Amy Paula Kokot**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Respondent.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

Petitioner requests attorneys' fees and costs after a vaccine injury claim was denied, under the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act"), codified as amended at 42 U.S.C. §§ 300aa-10 to -34 (2012). *See Graham v. Sec'y of Health & Human Servs.*, 2014 WL 5448705, at \*1 (Fed. Cl. Spec. Mstr. Sept. 24, 2014) ("*Graham I*") (denying Petitioner compensation on the merits of his claim). On August 4, 2015, the Special Master also denied fees and costs. *See Graham v. Sec'y of Health & Human Servs.*, No. 14-048V, 2015 WL 5334242, at \*1 (Fed. Cl. Spec. Mstr. Aug. 4, 2015) ("*Graham II*").

On review, the court must determine whether the Special Master erred in finding that Petitioner's claim had no "reasonable basis" and abused his discretion by denying Petitioner's Application For Attorneys' Fees And Costs. For the reasons set forth below, the court is required to affirm the Special Master's decision, because it was not "an abuse of discretion." 42 U.S.C. § 300aa-12(e)(2)(B); Vaccine Rule 27(b).[1]

---

[1] Vaccine Rule 27(b) of Appendix B of the Rules of the United States Court of Federal Claims ("RCFC") provides: "After reviewing a decision of the special master, the assigned judge

## I.    RELEVANT FACTUAL BACKGROUND.[2]

On October 15, 2012, six-year-old "G.G.G." received the FluMist flu vaccine.  *See Graham II*, 2015 WL 5334242, at *1.  Approximately one month later, G.G.G. was taken to an urgent care facility because of a variety of symptoms, including discomfort while urinating and lower back pain.  *Id.*  The attending doctor diagnosed G.G.G. with a urinary tract infection and prescribed an antibiotic.  *Id.*  But, on November 19, 2012 and November 21, 2012, G.G.G. visited the urgent care facility twice more and again was diagnosed with a urinary tract infection and prescribed a different antibiotic.  *Id.*

On November 23, 2012, G.G.G. exhibited symptoms of "seizure-like activity" and was transported to the hospital.  *Id.* at *2.  On November 24, 2012, G.G.G. was transported by airlift and admitted to Arkansas Children's Hospital.  *Id.*

On December 14, 2012, G.G.G.'s diagnoses upon death were "intractable seizures, limbic encephalopathy of unknown etiology, and respiratory failure."  *Id.*  The autopsy performed on December 17, 2012 by Dr. Carmen Steigman concluded that G.G.G. "died of Hashimoto['s] encephalopathy, complicated by status epilepticus and respiratory failure."  *Id.* (alteration in original).

On January 4, 2013, Dr. Mark Heulitt executed G.G.G.'s death certificate that attributed G.G.G.'s death to "respiratory failure as a consequence of status epilepticus."  *Id.*

## II.    PROCEDURAL HISTORY.

### A.    Special Master's Decision Denying Compensation.

On March 19, 2013, Elmer Graham ("Petitioner") contacted the law firm of Maglio Christopher Toale and Pitts, and spoke with a paralegal about filing a claim for compensation under the Vaccine Act.  *Id.*  During the next several months, Petitioner's attorney collected and reviewed G.G.G.'s medical records.  *Id.*  In December 2013, Petitioner's attorney continued to review medical records and by mid-January 2014, she began finalizing the petition for filing.  *Id.* at *3.

On January 22, 2014, a petition was filed in the United States Court of Claims Office of the Special Masters claiming that G.G.G.'s intractable seizures, limbic encephalopathy, respiratory failure, and death were caused by the flu vaccine she received on October 15, 2012.  *Id.*

---

may . . . set aside any findings of fact or conclusions of law found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue a separate decision[.]" Vaccine Rule 27(b).

[2] The relevant facts are derived from *Graham II*, 2015 WL 5334242, at *1–9.

On January 24, 2014, the Special Master issued a Scheduling Order, requiring Petitioner to submit medical records, affidavits, and a statement verifying Petitioner's good faith belief that his submission included all relevant records.  Order at 1, Dkt. No. 5.

On February 25, 2014 and February 28, 2014, Petitioner filed G.G.G.'s medical records, and an Affidavit and Statement Of Completion.

On May 27, 2014, the Secretary of Health and Human Services ("HHS") filed a Rule 4(c) Report ("Report"), stating that "intractable seizures, limbic encephalopathy, respiratory failure, and death are not table injuries for the flu vaccine."  Report at 7, Dkt. No. 14 (citing 42 C.F.R. § 100.3(a)).[3]  In the alternative, HHS also stated that "none of G.G.G.'s treating providers suggested a causal relationship between the flu vaccine and either her illness or death."  Report at 10, Dkt. No. 14.  Moreover, HHS argued that Petitioner failed to meet his burden of proof and was not entitled to compensation.  Report at 7–8, Dkt. No. 14 (citing *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) (holding that a petitioner meets his burden of proof by showing: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury")).

On June 9, 2014, the Special Master held a second status conference, wherein Petitioner disclosed that he was waiting on feedback from a pathologist before starting his search for an expert witness.

On July 17, 2014, the Special Master convened a status conference to discuss Petitioner's progress in obtaining a pathologist report.  On July 21, 2014, Petitioner was ordered to file a Status Report by July 31, 2014, "indicating when he expects to file a pathologist report" and "whether he plans to seek a neurologist report."  Order at 1, Dkt. No. 16.

On July 30, 2014, Petitioner filed a Status Report indicating his intent to file a Motion To Dismiss.  On August 18, 2014, Petitioner filed a Motion To Dismiss ("Pet. Mot. Dismiss"), in light of the evaluation findings of his private neuropathologist, Dr. Douglas Miller, M.D., that supported the autopsy's diagnosis of Hashimoto's Encephalopathy.  Pet. Mot. Dismiss at 4–5 ("Given that Dr. Miller's review of the autopsy slides uncovered new evidence that supported the previously questionable diagnosis of Hashimoto's, to proceed further would be unreasonable and would waste the resources of the [c]ourt, [HHS], and the Vaccine Program.").

On September 24, 2014, the Special Master entered an Unpublished Decision Denying Compensation, concluding that Petitioner was unable to demonstrate that G.G.G. suffered a Table Injury, or that the vaccine was the actual cause of death.  *See Graham I*, 2014 WL 5448705, at *2. The Special Master emphasized that neither G.G.G.'s medical records nor Dr. Miller's expert opinion—which evidenced that G.G.G. died of a cause other than the FluMist vaccine—supported

---

[3] Section 100.3(a) of Title 42 of the Code of Federal Regulations houses the Vaccine Injury Table, which "lists symptoms and injuries associated with each listed vaccine and a timeframe for each symptom or injury."  *De Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1351 (Fed. Cir. 2008); *see also* 42 U.S.C. § 300aa–14.

a causal connection between the vaccine and injury.  *Id.*  Accordingly, the Special Master dismissed Petitioner's case.  *Id.*

### B.     The Special Master's Decision Denying Attorneys' Fees And Costs.

On April 23, 2015, Petitioner filed an Application For Attorneys' Fees And Costs, seeking $23,065.60 in fees and $7,441.37 in costs.  *See Graham II*, 2015 WL 5334242, at *4.

On May 7, 2015, HHS filed an Opposition ("Opp."), asserting, *inter alia*, that Petitioner's April 23, 2015 Application For Attorneys' Fees And Costs failed to show a reasonable basis for compensation.  Opp. at 1.

On May 22, 2015, Petitioner filed a Reply to HHS's Opposition ("Pet. Rep."), arguing that HHS misunderstood the significance of Dr. Miller's expert opinion.  Pet. Rep. at 1.  Therein, Petitioner noted that Dr. Miller's opinion provided two grounds that supported the "reasonable basis" for filing the initial claim for compensation: the uncertainty of Hashimoto's encephalopathy and the general possibility that live-virus vaccines can potentially cause viral meningitis.  Pet. Rep. at 1–4.

On August 4, 2015, the Special Master issued a Published Decision Denying Motion For Attorneys' Fees And Costs, concluding that Petitioner failed to show that his claim was supported by a reasonable basis.  Therein, the Special Master found that Petitioner "did not cite to any medical record in which a treating doctor linked the FluMist vaccination to G.G.G.'s seizures and/or her death," and "did not file a report from an independently retained expert who opined that the FluMist caused G.G.G.'s seizures and/or her death."  *Graham II*, 2015 WL 5334242, at *6. The Special Master noted, that although Petitioner cited some evidence that called into question Hashimoto's encephalitis, as the cause of death, that evidence was insufficient to find a vaccine-related injury.  *Id.* at *7.  Under the "totality of the circumstances" approach, the Special Master also considered Petitioner's attorney's pre-filing conduct.  *Id.* at *8.  The Special Master found that Petitioner's attorney's conduct failed to support a reasonable basis finding, because Petitioner's attorney "possessed all the documents relating to G.G.G.'s case when [the attorney] filed the petition," and thus, Petitioner's attorney "could have completed her entire review of this case *and* obtained Dr. Miller's finalized report before the statute of limitations would have run." *Id.* at *8–9 (quoting Opp. at 14).  In accordance, the Special Master found that there was "no basis (reasonable or otherwise) for the claim set forth in the petition."  *Id.* at *6.  As such, the Special Master denied Petitioner's April 23, 3015 Application.

On September 3, 2015, Petitioner filed a Motion For Review ("Pet. Mot."), and a Memorandum In Support Of Motion For Review ("Pet. Mem."), seeking to reverse the Special Master's August 4, 2015 Decision and collect additional fees for "time expended in this matter subsequent to the filing of Petitioner's Reply[.]"  Pet. Mot. at 1; *see also* Pet. Mem. at 1.  On October 5, 2015, HHS filed a Response ("Resp.").

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction to review the decision of a Special Master in a vaccine-related injury case, pursuant to 42 U.S.C. § 300aa–12(e)(2)[4] and Vaccine Rule 23(a).[5]  After reviewing the Special Master's decision, the court may:

> A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
> (C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2); *see also* Vaccine Rule 27 (same).

### B.   Standard Of Review.

Under the Vaccine Act, when a petitioner is successful on the merits and awarded compensation, a Special Master *must* award reasonable attorneys' fees and costs.  *See* 42 U.S.C. § 300aa-15(e)(1) (emphasis added).[6]  A non-prevailing petitioner, however, does not enjoy this same right.  *See* 42 U.S.C. § 300aa-15(e)(1).  For non-prevailing petitioners, a Special Master may award reasonable attorneys' fees and costs, *if* the "[S]pecial [M]aster . . . determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1) (emphasis added); *see also Sebelius v. Cloer*, 133 S. Ct. 1886, 1891–92 (2013) (discussing standard); *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008) (same).

The court's review of a Special Master's decision to award or deny attorneys' fees and costs is subject to an abuse of discretion standard.  *See Saxton v. Sec'y of Dep't of Health & Human*

---

[4] Section 300aa-12(e)(2) of the Vaccine Act provides: "[W]ith respect to a petition, the United States Court of Federal Claims shall have jurisdiction to undertake a review of the record of the proceedings[.]"  42 U.S.C. § 300aa–12(e)(2).

[5] Vaccine Rule 23(a) provides: "To obtain review of the [S]pecial [M]aster's decision, a party must file a motion for review with the clerk within 30 days after the date the decision is filed."  Vaccine Rule 23(a).

[6] Section 300aa-15(e)(1) of the Vaccine Act, in relevant part, provides: "In awarding compensation on a petition filed under section 300aa-11 of this title the [S]pecial [M]aster or court *shall* also award as part of such compensation an amount to cover—(A) reasonable attorneys' fees, and (B) other costs, incurred in any proceeding on such a petition."  42 U.S.C. § 300aa-15(e)(1) (emphasis added).

*Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993) (holding that the Vaccine Act "clearly gives [the Special Master] discretion over whether to make [an attorneys' fees and costs] award"); *see also Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012) ("Special [M]asters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition.").

To find an abuse of discretion, the court must determine that the Special Master's decision was "(1) . . . clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the . . . [Special Master] rationally could have based his decision." *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991). In the context of Vaccine Act cases, an abuse of discretion generally does not occur when a Special Master "considered the relevant evidence, drew plausible inferences, and articulated a rational basis for his finding[.]" *Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283, 1290 (Fed. Cir. 2011); *see also Silva*, 108 Fed. Cl. at 405 (finding that "reversible error is extremely difficult to establish" in the context of a Special Master's fee determination.

### C.     The Court's Analysis.

The parties do not contest whether the petition was asserted in good faith. *See Graham II*, 2015 WL 5334242, at *4. Therefore, the only issues before the court are whether the Special Master erred in finding that Petitioner's claim had no "reasonable basis," and whether the denial of attorneys' fees and costs was an abuse of the Special Master's discretion.

To date, the United States Court of Appeals for the Federal Circuit has not interpreted the term "reasonable basis" in the context of fee awards for non-prevailing Vaccine Act petitioners. *See Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 153 (2012) ("Neither the Federal Circuit nor [the United States] Court [of Federal Claims] has had occasion to define the meaning of "reasonable basis" for purposes of fee awards under the Vaccine Act."); *see also Chuisano v. United States*, 116 Fed. Cl. 276, 285 (2014) (same). In the absence of such guidance, Special Masters and the court have taken various approaches in determining whether a vaccine-related injury claim is supported by a reasonable basis. *Compare Chuisano v. Sec'y of Health & Human Servs.*, 2013 WL 6234660, at *1 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (relying primarily on medical records and medical opinions), *aff'd*, 116 Fed. Cl. 276 (2014) (rejecting the Special Master's "bright-line" evidentiary standard, but affirming a fee denial under a "totality of circumstances" test) *with McNett v. Sec'y of Health & Human Servs.*, No. 99-648V, 2011 WL 760314, at *7 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) (awarding fees in light of the statute of limitations), *and Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (denying fees, because of an attorney's "minimal investigation" before filing a petition).

In this case, Petitioner relies on *Cloer*, wherein the United States Supreme contrasted claims that have a reasonable basis from those that are frivolous. Pet. Mem. at 7 (citing 133 S. Ct. at 1891). But, Petitioner misconstrues that a claim with a "reasonable basis" must be the binary opposite of a "frivolous" one. Pet. Mem. at 8. In other words, in Petitioner's view, so long as a claim is "not frivolous or specious," it satisfies the "reasonable basis" test required by 42 U.S.C. § 300aa–15(e)(1). More, however, is required. For example, in *Chuisano*, the court endorsed a "totality of the circumstances" test in determining whether a petitioner's claim had a "reasonable

basis." *See* 116 Fed. Cl. at 288.  Among the factors that the Special Master should consider, include: "'the factual basis, the medical support . . . jurisdictional issues,' the circumstances under which a petition is filed," and the conduct of the petitioner's attorney.  *Id.* (quoting *Di Roma*, 1993 WL 496981, at *1).

Petitioner also argues that a "bright-line" evidentiary standard is contrary to case law and the Vaccine Act.  Pet. Mem. at 11–13 (citing *Chuisano*, 116 Fed. Cl. at 286–88; *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011)).  But, the Petitioner incorrectly mischaracterizes the Special Master's decision as relying on the "bright-line" test that the court rejected in *Chuisano*.  In this case the Special Master did not end his inquiry, or unduly rely, only on medical evidence.  Instead, the Special Master also considered that Petitioner's attorney's pre-filing investigation and rejected Petitioner's argument that there was an impending need to file the petition as soon as possible to prevent spoliation of the evidence and obtain subpoenas for other records.  *See Graham II*, 2015 WL 5334242, at *6, *8–9.  Specifically, the Special Master found that Petitioner's attorney's "office possessed all the documents relating to G.G.G.'s case when [the attorney] filed the petition."  *Id.*  Therefore, the Special Master did not err in finding no "reasonable basis," but appropriately considered the "totality of the circumstances."

In addition, the decision of the United States Court of Appeals for the Federal Circuit in *Perreira v. Sec'y of Dep't of Health & Human Servs.*, 33 F.3d 1375 (Fed. Cir. 1994), is cited to show that the Special Master's use of a "bright-line" evidentiary standard was inconsistent with precedent.  Pet. Mem. at 15.  Petitioner's reliance on *Perreira* is also misplaced.  In that case, the Special Master found that the petition was filed in good faith and had a "reasonable basis"—until it subsequently was determined that the expert's opinion was unsupported.  *Id.* at 1375.  In this case, however, the Special Master did not find that Petitioner's claim had a reasonable basis at the time it was filed, *i.e.*, before receipt of Dr. Miller's expert opinion.  *See Graham II*, 2015 WL 5334242, at *6.

As for Petitioner's desire for consistency among Special Masters' decisions is misguided, because consistency is not required.  *See Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998), *aff'd*, 191 F.3d 1344 (Fed. Cir. 1999).  Moreover, "[w]hether there is a 'reasonable basis' to file a claim is determined on a case-by-case basis."  *Rayner v. Sec'y of Health & Human Servs.*, No. 13-417V, 2015 WL 720823, at *5 (Fed. Cl. Spec. Mstr. Jan. 27, 2015).  The fact that other Special Masters have awarded attorneys' fees and costs for similar cases is not relevant.

## IV.   CONCLUSION.

For the reasons discussed herein, the court has determined that the Special Master's denial of attorneys' fees and costs was not an abuse of discretion.  As such, the court affirms the Special Master's August 4, 2015 Decision and denies costs and fees on review.  The Clerk of the Court is ordered to enter judgment accordingly.

**IT IS SO ORDERED.**

   /s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**